Michael A. Schern (*pro hac vice pending*)
John C. Sarager #15373
SCHERN RICHARDSON FINTER, PLC
1640 S. Stapley Drive, Suite 132
Mesa, Arizona 85204
Email: courtdocs@srflawfirm.com
Tel: (480) 632-1929

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **MAX GARRETT, individually and on behalf of all similarly situation persons,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**Aptive Environmental, LLC, a Utah limited liability company,**<br><br>**Defendant.** | **Case No.**<br><br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT** |

Plaintiff Max Garrett, individually and on behalf of all similarly situated employees, for his complaint against Defendant Aptive Environmental, LLC, alleges as follows:

1.      Aptive Environmental, LLC ("Defendant" or "Aptive") provides pest control treatment services to consumers across the United States. Aptive sells its pest control treatment services to consumers almost exclusively through door-to-door sales efforts. Aptive's door-to-door sales force is comprised primarily of college students recruited by Aptive to join its summer sales teams. Aptive refers to the summer recruits as Sales Representatives ("Sales Reps").

2.      Plaintiff and the members of the classes he seeks to represent are individuals who have been hired by Defendant as Sales Reps to sell Defendant's pest control services door-to-door.

3.      Despite classifying them as independent contractors, Defendant regulates significant aspects of its Sales Reps' work, as described herein, such that Aptive is properly considered their employer.

4.      Plaintiff brings this lawsuit as an opt-in collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and as an opt-out class action under Utah's Payment of Wages Act ("UPWA"), Utah Code Annotated (U.C.A.) § 34-28-1 *et seq.*, to recover unpaid wages, unpaid overtime compensation, unreimbursed business expenses, statutory penalties, attorneys' fees, and other monies owed to himself and all similarly situated Sales Reps employed by Defendant.

### Jurisdiction and Venue

5.      Federal law governs the right to overtime pay in Utah. The FLSA authorizes court actions by private parties to recover damages for violation of its provisions. Jurisdiction over Plaintiff's FLSA claim is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 (federal question). Diversity jurisdiction also exists pursuant to 28 U.S.C. § 1332 since the matter in controversy exceeds $75,000, exclusive of interest and costs, and is or will be between citizens of different states.

6.      The UPWA authorizes court action by parties to recover damages for violation of its wage provisions. Jurisdiction over Plaintiff's UPWA claims is based on U.C.A. § 34-28-9.5 and 28 U.S.C. § 1367 (pendent claims).

7.      Venue in this District is proper under 28 U.S.C. § 1391 because Defendant maintains its principal place of business within this District and a substantial part of the events giving rise to the claims herein occurred in this District.

8.      Further, the purported independent contractor agreement Defendant required Plaintiff and its other Sales Reps to sign contains both a Utah choice of law clause and Utah County, Utah choice of venue clause.

### Parties

9.      Defendant is a Utah limited liability company which maintains its principal place of business in Provo, Utah, which is located within this District. Aptive makes its corporate policy decisions, and manages its Sales Reps, from its headquarters in Utah.

10. On or about April 19, 2019, Plaintiff Max Garrett was hired by Defendant as a Sales Rep to work in one of Defendants' Texas branch offices until he was terminated on August 5, 2019

**General Allegations**

11. Defendant provides pest control services to consumers and residential homeowners across the country.

12. Defendant describes itself as an industry leader in pest control services.

13. On its website Defendant claims that it is the fastest-growing pest control service in North America.

14. Defendant offers its pest control treatment services to consumers almost exclusively through its Sales Reps who sell Defendant's pest control service contracts door-to-door in residential neighborhoods located within one of Aptive's 39 branch offices across the country.

15. The Sales Reps comprising Defendant's door-to-door sales force are primarily 18 to 25 year-old college students Defendant recruits from universities in Utah, Idaho, Arizona, Delaware, and Virginia.

16. Defendant hires Sales Reps to sell its pest control service contract door-to-door during Defendant's Summer Sales Season which typically begins the last week of April and concludes the last day of August.

17. Upon being hired for a Summer Sales Season, Aptive Sales Reps, including Plaintiff, sign a lengthy employment agreement wherein Defendant characterizes the Sales Reps as independent contractors.

18. Aptive Sales Reps, including Plaintiff, perform or performed services directly within the usual course of the business of Defendant, which is to provide pest control treatment services for consumers.

19. Upon being hired for a Summer Sales Season, Aptive Sales Reps, including Plaintiff, are given a 150-page Summer Sales Training Manual.

20.     Upon being hired for a Summer Sales Season, Aptive informs each new Sales Rep, as it did Plaintiff, that he or she has been selected as part of Aptive Environmental's elite door-to-door sales force.  It is then explained to each new Sales Rep that Aptive has created a training program to teach Sales Reps the principals to become a successful salesperson.  After asking each new Sales Rep to "give us your all," Aptive informs each new Sales Rep that "[e]veryone at Aptive, including sales representatives, service pros, customer loyalty specialists, and management, is part of the Aptive family, regardless of temporary or full-time status."

21.     Aptive issues to its Sales Reps, as it did Plaintiff, the tools and materials necessary to perform the work for which they were hired.  The tools and materials Aptive issues to its Sales reps includes, but is not limited to charts identifying various bugs and pests, rate cards setting forth the fees to be charged to consumers purchasing Aptive pest control services, an Aptive uniform to be worn by the Sales Rep when selling Aptive pest control services, an Aptive identification badge the Sales Rep is to wear on a lanyard around his or neck when selling Aptive pest control services, a 150-page sales training manual, and access to multiple sales training videos through Aptive's website.

22.     In addition to the tools and materials set forth above, Aptive provides its Sales Reps, as it did Plaintiff, with a "New Customer Sales Script," which is meant to be used as an initial script for the Sales Reps to memorize.  According to Aptive, "[e]ach word and phrase [of the New Customer Sales Script] has been specifically choses and placed in a distinct order to help [the Sales Rep] more effectively sell Aptive's service."

23.     In addition to the New Customer Sales Script, Aptive provides its Sales Reps, as it did Plaintiff, with a "Switchover Sales Script" which, according to Aptive, "is meant to serve as a script for [the Sales rep] to memorize to effectively switchover potential customers that are already with another pest control service.  Each word and phrase [of the Switchover Sales Script] has been specifically choses and placed in a distinct order for a purpose.  Make sure you memorize this approach by the end of your second week of sales."

24.     After being hired for a Summer Sales Season, Aptive does not allow new Sales Reps to sell its pest control services unaccompanied until the Sales Rep completes two and a half days of initial training provided by Aptive.

25.     Among other things, the initial training requires that Sales Reps read the 150-page Summer Sales Training Manual once, all the way through, read the entire goaptive.com website, watch an Aptive service pro training video, and watch Aptive's sales training video library twice, all the way through.

26.     After completing Aptive's initial two and a half day training, Sales Reps are to complete more comprehensive training utilizing a three-week curriculum developed and provided by Aptive.

27.     Among other things, the comprehensive three-week training requires that Sales Reps observe an Aptive sales team leader for two hours selling door-to-door, re-read the 150-page Summer Sales Training Manual two more times all the way through, re-watch Aptive's sales training video library three more times all the way through and to choose a specific Sales Rep shown in the training videos to mimic both verbally and nonverbally, memorize the New Customer Sales Script and Switchover Sales Script, memorize ten scripted rebuttals to customer objections, and participate in an on-the-door training and critique with an Aptive sales team leader for two hours.

28.     Sales Reps are required to report the progress of their training to their supervisors and managers.

29.     Aptive's Sales Reps are assigned to work in a specific geographic area determined by an Aptive sales team leader or manager.

30.     Aptive's Sales Reps are instructed to follow Aptive's recommended daily work schedule as follows:

**Monday Through Friday**

| | |
|---|---|
| **9:00 – 9:35:** | Daily correlation meeting: Receive sales training lesson, role plays, and incentives; review previous day's goals; set new goals and benefit from team synergy |
| **9:45 – 10:30:** | Leave office and travel to assigned areas |
| **10:30 – 2:30:** | Sell door-to-door in assigned areas |
| **2:30 – 4:30:** | Lunch break |
| **4:30 – dark:** | Continue to sell door-to-door in assigned areas |

**Saturday**

| | |
|---|---|
| **9:00 – 9:10:** | Brief correlation meeting; receive weekend announcements, set Saturday goals—no training lesson |
| **9:15 – 10:00:** | Leave office and travel to assigned areas |
| **10:00 – 4:00:** | Sell door-to-door in assigned areas for six hours |
| **4:00:** | Leave assigned sales area and return to office; turn in paperwork, post sales numbers, mark sales map, do go-backs, make phone calls, and obtain sales map for Monday |

31.     Aptive advises its Sales Reps that they are allowed to continue to work during the 2:30 and 4:30 schedule break, and that they may also work until dark on Saturday if the Sales Reps' weekly goals have not been met.

32.     Aptive provides its new Sales Reps with a list of expectations they are to meet for each of the scheduled daily correlation meetings.  Pursuant to the list of expectations, Sales Reps are to arrive ten minutes early (8:50 a.); come dressed in work attire, and ready for the day, with all the necessary work materials; be awake (get a minimum of seven hours of sleep the night before); be attentive and avoid cell phone distractions by keeping phones on silent and in a pocket; be happy and excited; constantly ask questions write them down when on doors, and ask them the following day.

33.     Aptive prohibits its Sales Reps from engaging in certain conduct and provides each Sales Rep with a list of unacceptable Sales Rep practices that may result in termination which include arguing with a potential customer, failing to explain Aptive's pest control service contract, speaking negatively about an Aptive competitor or telling a potential customer what a competitor's pest control service does or does not do, and contacting a competitor with or without a potential

customer's permission and advising the competitor top cancel a pest control service contract between the competitor and potential customer.

34.     The overwhelming majority of Aptive's Sales Reps are recruited from their home state or the state in which they are attending university and assigned by Aptive to work in another state.  For example, Sales Reps, like Plaintiff, may be recruited from their home state of Utah, but assigned by Aptive to work in the state of Texas during the Summer Sales Season.

35.     Because Aptive's Sales Reps generally work for Aptive during the Summer Sales Season in another state, Aptive provides the Sales Reps, as it did Plaintiff, the option to sublease from Aptive temporary living accommodations and furniture for the Summer Sales Season.  Aptive deducts rent for the temporary accommodations and furniture from the Sales Reps' paycheck in the amount of $250 bi-weekly.

36.     Aptive requires that Sales Reps who live in its Summer Sales Season housing, as Plaintiff did, abide by Aptive's housing code of conduct, which mandates that Sales Reps abstain from the use of alcohol, tobacco, cigarettes, and illegal drugs or any other controlled substances (except those obtained pursuant to a lawful prescription written by a licensed physician) in and around the apartment premises while living or visiting the apartments.

37.     Aptive's housing code of conduct also prohibits any visitors, male or female, from spending the night at the apartments.

38.     A Sales Rep who violates Aptive's housing code of conduct is subject to immediate termination.

39.     In addition to its housing code of conduct, an Aptive zero tolerance policy is applied to all Sales Reps, whether living in Aptive housing or not, which states that all Sales Reps must abstain from drinking alcohol, smoking, and/or illegal drugs while on the job.

40.     In addition to the myriad other rules Aptive requires its Sales Reps to follow as a condition of their employment, Sales Reps are prohibited from discussing, or even uttering to any third person the amount of pay they agreed to accept from Aptive as wages earned for the work they perform during the Summer Sales Season.

41.     Aptive warns its Sales Reps that if they speak of their payment structure, they will be fired, any pay they have earned will be withheld, and they will be sued.

42.     On or about April 4, 2019 and shortly after being hired by Aptive, Plaintiff Garrett sent an electronic communication to his supervisor and attached various documents to the communication as requested by the supervisor.  The requested and attached documents referenced the amount of money Aptive agreed to pay Plaintiff Garrett for his work.  Plaintiff Garrett followed his supervisor's instructions and sent the correspondence as requested, but inadvertently sent the communication via "reply all," inadvertently including at least one other Aptive Sales Rep as a recipient of the communication.  Plaintiff Garrett's supervisor immediately responded to him advising that he had accidentally sent the communication to persons in addition to the supervisor.  Plaintiff Garrett apologized for the error and presumed that was the end of the matter, as his supervisor never brought it up again and gave Plaintiff Garrett his work assignment in Texas.

43.     Plaintiff Garrett continued his employment with Aptive in Texas until he was fired on August 5, 2019 for allegedly violating Aptive's draconian and illegal policy of prohibiting Sales Reps from disclosing their pay to anyone—despite the fact that Plaintiff Garrett's supervisor was aware of the alleged policy violation four months prior.  Rather than enforce its policy of secrecy and terminating Plaintiff Garrett's employment on April 4, 2019 for violating the policy, Aptive encouraged Plaintiff Garrett to continue working and to sell hundreds of pest control service contracts door-to-door.  Then in August, after selling dozens of pest control service contracts and earning over $30,000, Plaintiff Garrett was fired for disclosing his compensation package to others in violation of Aptive's policy of secrecy.  Aptive then refused to pay Plaintiff Garrett the money he earned alleging that Garrett was required to pay Aptive tens of thousands of dollars as a "liquidated damage" for violating the policy of secrecy.

44.     Defendant improperly classifies its Sales Reps, including Plaintiff, as independent contractors.

45.     Under the law, Defendant's Sales Reps are properly considered employees of Aptive for several reasons including, but not limited to, the following:

a. Defendant exerts substantial control over its Sales Reps by requiring them to, among other things:

    i.   comply with specific sales guidelines,

    ii.   meet Aptive's sales requirements,

    iii.   complete training programs designed by Aptive specifically and exclusively  for  the use of Aptive Sales Reps,

    iv.   work for a specific period of time, in a specific geographic area, during specific hours only,

    v.   maintain required certifications,

    vi.   memorize and use specific sales scripts and rebuttal scripts,

    vii.   abstain from certain sales tactics, regardless of whether such tactics are legal,

    viii. live by a certain code of conduct,

    ix. refrain from discussing or even uttering to any person the amount of payment they agreed to accept as wages in exchange for the work they perform for Aptive,

    x.   use Aptive's training software and applications, and

    xi.  agree to Defendant's policies, including confidentiality, nondisclosure, and   non-solicitation policies.

b. Defendant sets the manner, rate, and timing by which Sales Reps are paid;

c. Sales Reps are economically dependent on Defendant;

d. Sales Reps do not share in the profits of the business or control the factors that affect the volume of pests that customers seek to eliminate;

e. Sales Reps do not undertake risks associated with an independent business and therefore cannot suffer a business loss other than a loss in earnings;

f. Defendant's investment into the tools, materials, training manual, training videos, applications and other technology that it provides to Sales Reps and which are

necessary for Sales Reps to perform their work far outweighs Sales Reps' individual investments into the other instrumentalities necessary to perform their work for Aptive;

g.  Defendant maintains the right to  hire Sales Reps and the right to terminate Sales Reps without notice;

h.  Sales Reps are not required to have any experience in the pest control service industry or in the door-to-door sales industry;

i.  Aptive provides introductory training to Sales Reps in the areas of pest control service and door-to-door sales and Aptive Sales Reps do not use the training provided by Aptive in any independent fashion from their employment with Defendant during the Summer Sales Season;

j.  Sales Reps provide a service to Defendant, because without their door-to-door selling, Aptive would not be a viable business;

k.  Aptive's Sales Reps are essential to Defendant's business because Defendant would not exist without the money generated by its Sales Reps' services; and

l.  Aptive's Sales Reps are not engaged in an occupation or business distinct from Aptive's business.

46.  By misclassifying its Sales Reps as independent contractors, Defendant does not comply with the FLSA and/or UPWA.

47.  Specifically, Defendant does not:

a.  pay its Sales Reps for all the time they work;

b.  pay Sales Reps overtime compensation;

c.  reimburse Sales Reps for business expenses;

d.  timely pay Sales Reps their full wages; or

e.  keep accurate records of Sales Reps' time worked and wages earned.

48.  During relevant times, Plaintiff and the other Sales Reps regularly worked over 40 hours per workweek.

49.     Defendant's job descriptions suggest Sales Reps will work 40+ hours with no maximum hours.

50.     Starting in or around May 1, 2019, Plaintiff Garrett averaged approximately 55 hours of work per workweek.

51.     During relevant times, Defendant required Plaintiffs and the other Sales Reps to complete administrative tasks and participate in administrative meetings but did not pay them for this work.

52.     During relevant times, Defendant required Plaintiff and the other Sales Reps to complete training but did not pay them for this work.

53.     During relevant times, Defendant did not pay Plaintiff and similarly situated Sales Reps an overtime premium for time worked over 40 hours per workweek.

54.     As a result, Defendant systematically failed to timely pay Plaintiff and its other Sales Reps their full wages and failed to keep accurate time and wage records.

55.     The net effect of Defendant's policies and practices is that Defendant willfully failed to pay required overtime compensation to Plaintiff and its other Sales Reps in violation of the FLSA, and failed to pay them for all time worked, timely pay their full wages, and keep accurate records under the UPWA.

## Class and Collective Action Allegations

56.     Plaintiff brings Count I as an opt-in collective action claim on behalf of similarly situated Sales Reps employed by Defendant at any time within the last  three  years pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b).

57.     The FLSA claim may be pursued by those who opt-in to this case pursuant to 29 U.S.C. § 216(b).

58.     Plaintiff, individually and on behalf of other similarly situated employees, seeks relief on a collective basis challenging Defendant's practice of failing to pay employees overtime compensation. The number and identity of other plaintiffs yet to opt-in may be ascertained from

Defendant's records, and potential plaintiffs may be notified of the pendency of this action via mail and/or email.

59.    Plaintiff and all of Defendant's Sales Reps are similarly situated in that:

a.   They have worked as Sales Reps for Defendant;

b.   Defendant has classified them as independent contractors;

c.   They have been subject to similar policies and procedures imposed by Defendant regarding the scope of their work; and

d.   They have been subject to the same policy of failing to pay overtime compensation for hours worked in excess of 40 per workweek.

60.    Plaintiff brings Counts II-VI as a class action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and as Class Representatives of the following persons (the "Class"):

a.   All current and former Sales Reps employed by Defendant at any time during the three years preceding the filing of this Complaint.

61.    Counts II-VI, if certified for class-wide treatment, are brought on behalf of all similarly situated persons who do not opt-out of the Class.

62.    Plaintiff's state law claims asserted in Counts II-VI satisfy the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

63.    The Class sought in Count II satisfies the numerosity standard as it consists of at least one hundred persons who are geographically dispersed and, therefore, joinder of all Class members in a single action is impracticable.

64.    Questions of fact and law common to the Class sought in Counts II-VI predominate over any questions affecting only individual members. The questions of law and fact common to the Class arising from Defendant's actions include, without limitation:

a.   They have worked as Sales Reps for Defendant;

b.   Defendant has classified them as independent contractors;

c. They have been subject to similar policies and procedures imposed by Defendant regarding the scope of their work; and

d. They have been subject to the same policy of failing to pay for all time worked, failing to reimburse for business expenses, failing to timely pay full wages, and failing to keep accurate time and wage records.

65.     The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claim.

66.     Plaintiff's claims are typical of those of the Class sought in Counts II-VI in that:

a. They have worked as Sales Reps for Defendant;

b. Defendant has classified them as independent contractors;

c. They have been subject to similar policies and procedures imposed by Defendant regarding the scope of their work; and

d. They have been subject to the same policy of failing to pay for all time worked, failing to reimburse for business expenses, failing to timely pay full wages, and failing to keep accurate time and wage records.

67.     Plaintiff is an adequate representative of the Class sought in Counts II-VI because he is a member of that Class and his interests do not conflict with the interests of the members of the Class he seeks to represent. The interests of the members of the Class sought in Counts II-VI will be fairly and adequately protected by Plaintiff.

68.     Maintenance of the claims asserted in Counts II-VI as a class action is superior to other available methods for fairly and efficiently adjudicating the controversy as members of the Class have little interest in individually controlling the prosecution of separate class actions, no other litigation is pending over the same controversy, it is desirable to concentrate the litigation in this Court due to the relatively small recoveries per member of the Class, and there are no material difficulties impairing the management of a class action.

69.     It would be impracticable and undesirable for each member of the Class, sought in Counts II-VI, who suffered harm, to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class members.

### COUNT I: VIOLATION OF FLSA BY FAILING TO PAY OVERTIME COMPENSATION

70.     Plaintiff reasserts and re-allege the allegations set forth above.

71.     At all relevant times herein, Plaintiff and all other similarly situated Sales Reps have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

72.     Defendant is an employer, and Plaintiff and all other similarly situated Sales Reps are employees under the FLSA. 29 U.S.C. § 203.

73.     Section 13 of the FLSA, 29 U.S.C. § 213, exempts certain categories of employees from federal minimum wage obligations, but none of the exemptions apply to Plaintiff or other similarly situated Sales Reps.

74.     The FLSA regulates, among other things, the payment of overtime compensation by employers whose employees are engaged in interstate commerce, or engaged in production of goods for commerce, or employed in an enterprise engaged in commerce or in production of goods for commerce. 29 U.S.C. § 206(a).

75.     Defendant is subject to the FLSA's overtime requirements because it is an enterprise engaged in interstate commerce, and its Sales Reps are engaged in commerce.

76.     Under section 7(a)(1) of the FLSA, 29 U.S.C. § 207(a)(1), employees are entitled to be compensated at a rate of one and one-half times the regular rate at which they are employed for hours worked in excess of 40 hours per workweek.

77.     As alleged herein, Defendant has suffered or permitted Plaintiff and other Sales Reps to perform compensable work during overtime without providing them required overtime pay in that

Defendant failed to compensate them for such work at a rate of at least one and one-half times their regular rate.

78.    Defendant knew or should have known that its pay policies, practices and methodology result in failure to pay Sales Reps overtime compensation.

79.    Defendant, pursuant to its policy and practice, violated the FLSA by refusing and failing to pay overtime compensation to Plaintiff and other similarly situated Sales Reps.

80.    Plaintiff and all similarly situated Sales Reps are victims of a uniform and employer-based compensation policy. This uniform policy, in violation of the FLSA, has been applied, and continues to be applied, to all Defendant's Sales Reps.

81.    Plaintiff and all similarly situated Sales Reps are entitled to damages equal to the mandated overtime compensation earned within three years from the date each Plaintiff joins this case, plus periods of equitable tolling, because Defendant acted willfully and knew, or showed reckless disregard for, whether its conduct was unlawful.

82.    Defendant has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result, Plaintiff and other similarly situated Sales Reps are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime compensation under 29 U.S.C. § 216(b). Alternatively, should the Court find Defendant acted in good faith and with reasonable grounds to believe its actions were lawful, Plaintiff and all similarly situated Sales Reps are entitled to an award of prejudgment interest at the applicable legal rate.

83.    As a result of the aforesaid willful violations of the FLSA's overtime provisions, overtime compensation has been unlawfully withheld by Defendant from Plaintiff and all similarly situated Sales Reps. Accordingly, Defendant is liable under 29 U.S.C. § 216(b), together with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

WHEREFORE, Plaintiff and all similarly situated Sales Reps demand judgment against Defendant and request: (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs as allowed

by Section 16(b) of the FLSA; (4) pre-judgment and post- judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

## COUNT II: VIOLATION OF UPWA BY FAILING TO PAY FOR ALL TIME WORKED

84.     Plaintiff reasserts and re-allege the allegations set forth above.

85.     At all relevant times herein, Plaintiff and the Class have been entitled to the rights, protections, and benefits provided under the UPWA including, but not limited to, be paid for all time worked. U.C.A. § 34-28-1 *et seq.*

86.     During all times relevant to this action, Defendant was an employer of Plaintiff and the Class of employees within the meaning of the UPWA. U.C.A. § 34-28-2.

87.     Under Utah law, an employer is required to pay its employees their full wages earned. U.C.A. §§ 34-28-2, 34-28-9.5.

88.     As alleged herein, Defendant has failed to pay its Sales Reps their full wages as required by the UPWA by failing to pay them for all time worked, including time performing administrative tasks, correcting edit/denial errors, and completing training modules.

89.     As alleged herein, Defendant has suffered or permitted Plaintiff and other Sales Reps to perform this compensable work without pay.

90.     Defendant, pursuant to its policy and practice, violated the UPWA by refusing and failing to pay full wages to Plaintiff and the Class.

91.     Plaintiff may file this claim without exhausting any administrative remedies since he is filing their claim on behalf of himself and the Class, and the aggregate amount of the Class's combined claim is greater than $10,000. U.C.A. § 34-28-9.5(2).

92.     Plaintiffs and the Class are entitled to actual damages; and an amount equal to 2.5% of unpaid wages owed to them, assessed daily. U.C.A. § 34-28-9.5(3).

WHEREFORE, Plaintiff and the Class demand judgment against Defendant and request: (1) actual damages; (2) statutory damages pursuant to U.C.A. § 34-28-9.5(3) and § 34-28-5; (3) costs of litigation

and attorney's fees as provided by U.C.A. § 34-27-1; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

## COUNT III: VIOLATION OF UPWA BY FAILING TO REIMBURSE BUSINESS EXPENSES

93.     Plaintiff reasserts and re-allege the allegations set forth above.

94.     At all relevant times herein, Plaintiff and the Class have been entitled to the rights, protections, and benefits provided under the UPWA including, but not limited to, reimbursement for business expenses. U.C.A. § 34-28-1 *et seq.*

95.     During all times relevant to this action, Defendant was an employer of Plaintiff and the Class of employees within the meaning of the UPWA. U.C.A. § 34-28-2.

96.     Under Utah law, an employer may only deduct, withhold, or divert wages from employees under specific circumstances, none of which apply here.

97.     Further, an employer may not require an employee to rebate, refund, offset or return wages, except under specific circumstances which also do not apply here.

98.     As alleged herein, Defendant has deducted, withheld or diverted wages from its Sales Reps, and/or required them to rebate, refund, offset or return their wages, by failing to reimburse them for business expenses incurred to perform their job.

99.     Defendant, pursuant to its policy and practice, violated the UPWA by refusing and failing to reimburse Plaintiff and the Class for their business expenses.

100.     Plaintiff may file this claim without exhausting any administrative remedies since he is filing this claim on behalf of himself and the Class, and the aggregate amount of the Class's combined claim is greater than $10,000. U.C.A. § 34-28-9.5(2).

101.     Plaintiff and the Class are entitled to actual damages, and an amount equal to 2.5% of unpaid wages owed to them, assessed daily. U.C.A. § 34-28-9.5(3).

WHEREFORE, Plaintiff and the Class demand judgment against Defendant and request: (1) actual damages; (2) statutory damages pursuant to U.C.A. § 34-28-9.5(3); (3) costs of litigation and attorney's

fees as provided by U.C.A. § 34-27-1; (4) pre-judgment and post- judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

**COUNT IV: VIOLATION OF UPWA BY FAILING
TO TIMELY PAY FULL WAGES**

102.    Plaintiff reasserts and re-allege the allegations set forth above.

103.    At all relevant times herein, Plaintiff and the Class have been entitled to the rights, protections, and benefits provided under the UPWA including, but not limited to, timely receiving their full wages. U.C.A. § 34-28-1 *et seq*.

104.    During all times relevant to this action, Defendant was an employer of Plaintiff and the Class of employees within the meaning of the UPWA. U.C.A. § 34-28-2.

105.    Under Utah law, an employer is required to pay its employees all of their wages earned at regular intervals, at least twice per month. U.C.A. § 34-28-3.

106.    As alleged herein, Defendant has not timely paid Plaintiff and its Sales Reps their full wages by failing to (1) pay them for all time worked, (2) pay them overtime compensation, and (3) reimburse them for business expenses.

107.    Defendant, pursuant to its policy and practice, violated the UPWA by refusing and failing to timely pay Plaintiff and the Class their earned wages.

108.    Plaintiff may file this claim without exhausting any administrative remedies since he is filing this claim on behalf of himself and the Class, and the aggregate amount of the Class's combined claim is greater than $10,000. U.C.A. § 34-28-9.5(2).

109.    Plaintiff and the Class are entitled to actual damages, and an amount equal to 2.5% of unpaid wages owed to them, assessed daily. U.C.A. § 34-28-9.5(3).

WHEREFORE, Plaintiff and the Class demand judgment against Defendant and request: (1) actual damages; (2) statutory damages pursuant to U.C.A. § 34-28-9.5(3); (3) costs of litigation and attorney's fees as provided by § 34-27-1; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

## COUNT V: VIOLATION OF UPWA BY FAILING
## TO KEEP ACCURATE RECORDS

110.    Plaintiff reasserts and re-allege the allegations set forth above.

111.    At all relevant times herein, Plaintiff and the Class have been entitled to the rights, protections, and benefits provided under the UPWA including, but not limited to, accurate records of time worked and wages paid. U.C.A. § 34-28-1 *et seq.*

112.    During all times relevant to this action, Defendant was an employer of Plaintiff and the Class of employees within the meaning of the UPWA. U.C.A. § 34-28-2.

113.    Under Utah law, an employer is required to keep a true and accurate record of time worked and wages paid each pay period for each employee who is employed on an hourly or a daily basis in a form required by commission rules. U.C.A. § 34-28-10.

114.    As alleged herein, Defendant has not timely kept accurate time and wage records of its Sales Reps.

115.    Defendant does not ask that its Sales Reps submit the time they spent working, only the number of pest control service contracts sold.

116.    Defendant also does not ask that its Sales Reps submit the business expenses they incur to perform their job.

117.    Defendant, pursuant to its policy and practice, violated the UPWA by refusing and failing to keep accurate time and pay records for Plaintiff and the Class.

118.    Plaintiff may file this claim without exhausting any administrative remedies since he is filing this claim on behalf of himself and the Class, and the aggregate amount of the Class's combined claim is greater than $10,000. U.C.A. § 34-28-9.5(2).

119.    Plaintiff and the Class are entitled to actual damages, and an amount equal to 2.5% of unpaid wages owed to them, assessed daily. U.C.A. § 34-28-9.5(3).

WHEREFORE, Plaintiff and the Class demand judgment against Defendant and request: (1) actual damages; (2) statutory damages pursuant to U.C.A. § 34-28-9.5(3); (3) costs of litigation and attorney's

fees as provided by § 34-27-1; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

<b><u>COUNT VI: VIOLATION OF NLRA</u></b>

120.    Plaintiff reasserts and re-allege the allegations set forth above.

121.    At all relevant times herein, Plaintiff and all other similarly situated Sales Reps have been entitled to the rights, protections, and benefits provided under the National Labor Relations Act, 29 U.S.C. §§ 151, *et seq.*

122.    Defendant is an employer, and Plaintiff and all other similarly situated Sales Reps are employees under the NLRA. 29 U.S.C. § 152.

123.    Section 7 of the NLRA, 29 U.S.C. § 157, guarantees employees "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection," as well as the right "to refrain from any or all such activities."

124.    Section 8 of the NLRA, 29 U.S.C. § 158, makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Section 7."

125.    Defendant, pursuant to its policy and practice, violated and continues to violate the NLRA by prohibiting Sales Reps, as it did Plaintiff, from discussing or even uttering the amount of pay they expect to receive from Aptive in exchange for the work they perform.

126.    Defendant, pursuant to its policy and practice, violated and continues to violate the NLRA by penalizing Sales Reps by withholding and refusing to  pay wages earned as it did Plaintiff, from discussing or even uttering the amount of pay they expect to receive from Aptive in exchange for the work they perform.

WHEREFORE, Plaintiff and the Class demand judgment against Defendant and request: (1) actual damages; (2) statutory damages pursuant to 29 U.S.C. §§ 151, *et seq.*;  (3) costs of litigation and attorney's fees as provided statute; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

## DEMAND FOR JURY TRIAL

127.    Plaintiff hereby requests a trial by jury of all issues triable by a jury.

WHEREFORE, Plaintiff and the Class demands judgment against Defendant as set forth and prayed for above.

DATED October 6, 2020.

SCHERN RICHARDSON FINTER, PLC

By: _____
Michael A. Schern (*pro hac vice pending*)
John C. Sarager
1640 S. Stapley Dr., Ste. 132
Mesa, AZ 85204
Attorneys for Plaintiffs